Zheng v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2011

(Argued: January 11, 2012                    Decided: February 27, 2012)

Docket No. 10-3838-ag

————————————

MEI JUAN ZHENG, AKA ZHENG MEI JUAN,

*Petitioner*,

—v.—

ERIC H. HOLDER, JR., UNITED STATES ATTORNEY GENERAL,

*Respondent*.

————————————

B e f o r e :

KATZMANN AND LYNCH, *Circuit Judges*, KAPLAN, *District Judge.*[*]

————————————

Petition for review of an August 30, 2010 Board of Immigration Appeals ("BIA" or the

"Board") unpublished decision affirming an immigration judge's ("IJ") April 30, 2003 decision

finding that Mei Juan Zheng ("Zheng" or "petitioner") filed a frivolous asylum application.

_____

[*] The Honorable Lewis A. Kaplan, United States District Judge for the Southern District
of New York, sitting by designation.

Zheng's petition returns to this Court after a February 1, 2008 opinion remanding the case to the BIA to consider whether: (1) a "frivolousness finding" can be entered against an alien who has withdrawn her asylum application; and (2) an IJ retains any discretion to decline to make a frivolousness finding. We hold that the BIA's conclusion that a withdrawn asylum application can serve as the basis of a frivolousness finding is reasonable, but that the BIA's decision that the IJ lacked discretion not to make such a finding is unpersuasive. Accordingly, for the reasons stated below, the petition for review is **DENIED** in part and **GRANTED** in part, the BIA's decision is **VACATED**, and we **REMAND** for further proceedings consistent with this opinion.

_____

H. RAYMOND FASANO, Youman, Madeo & Fasano, LLP, New York, N.Y., *for Petitioner*.

TIFFANY L. WALTERS, Trial Attorney, Office of Immigration Litigation (David V. Bernal, Assistant Director, Office of Immigration Litigation, Tony West, Assistant Attorney General *on the brief*), Civil Division, United States Department of Justice, *for Respondent*.

_____

KATZMANN, *Circuit Judge*:

This case is before us following our decision in *Mei Juan Zheng v. Mukasey*, 514 F.3d 176, 181 (2d Cir. 2008), in which we concluded that petitioner's initial application for asylum contained deliberately fabricated material elements and that the IJ had followed the appropriate procedures before entering a frivolousness finding. Then, we also remanded the case to the BIA to consider: (1) whether "the IJ's authority to 'determine that an alien has knowingly made a frivolous application for asylum' [is] limited to circumstances in which that IJ makes 'a final determination on such application'"; and (2) if an IJ retains "any discretion under 8 U.S.C. § 1158(d)(6) to decline to make a frivolousness finding even if she finds that the statutory and

2

regulatory conditions for frivolousness have been met." *Id.* at 181 (emphasis and brackets omitted). By unpublished opinion dated August 30, 2010, the BIA addressed this Court's questions and again dismissed Zheng's appeal from the IJ's frivolousness finding. Now, Zheng challenges the BIA's conclusion that a withdrawn application can serve as the basis of a frivolousness finding and that an IJ lacks discretion as to whether to enter such a finding when the statutory and regulatory preconditions have been met. For the reasons set forth below, we conclude that the BIA's determination, pursuant to its published opinion in *Matter of X-M-C-*, 25 I. & N. Dec. 322 (B.I.A. 2010), that a withdrawn application can serve as the basis for a frivolousness finding is reasonable. We are not persuaded by the BIA's opinion, however, to the extent it concludes that the IJ in Zheng's case lacked discretion not to enter a frivolousness finding. Accordingly, we deny in part and grant in part Zheng's petition for review, vacate the BIA's decision, and remand for further proceedings consistent with this opinion.

## BACKGROUND

Zheng, a native and citizen of the People's Republic of China, attempted to enter the United States on March 27, 2000 without valid entry documents. Following a credible fear interview, in which Zheng claimed that she was forced to undergo an abortion under China's family planning policy and that she had fled the country because the government wanted to insert an intrauterine device, Zheng was placed in removal proceedings pursuant to 8 U.S.C. § 1182(a)(7)(A)(i)(I). On August 11, 2000, after Zheng was warned that if she knowingly filed a frivolous application for asylum, she would be forever barred from receiving any benefits under the Immigration and Nationality Act ("INA"),[1] Zheng filed an asylum application (the "August

---

[1] The content of the verbal warning given to Zheng, the adequacy of which is not disputed in this appeal, is included in this Court's prior opinion, *Mei Juan Zheng*, 514 F.3d at

2000 Application") asserting that she had suffered past persecution and feared future persecution under China's family planning policy.

At a January 31, 2001 hearing, Zheng withdrew her April 2000 Application with prejudice. On May 25, 2001, she filed a new application seeking withholding of removal under the Convention Against Torture (the "May 2001 Application"), on the grounds that if she returned to China she would be harmed by the loan sharks from whom she had borrowed money to come to the United States or tortured by Chinese authorities for illegally entering this country. In her May 2001 Application, Zheng stated that she had "withdrawn [her] previously filed asylum application based on China's coerceive family planning policy because [she] believe[s] that it was wrong to lie to the Immigration Court." Certified Administrative Record ("C.A.R.") 537.

On April 30, 2003, at the merits hearing on her May 2001 Application, Zheng testified, *inter alia*, that she had never had any problems under China's family planning policy, that her first application was false, and that she had been told to use that story by the smugglers who had arranged her entry into the United States. After Zheng finished testifying, the IJ asked her lawyer to explain whether he "should or should not make a frivolousness finding" and stated that he was "not sure" whether 8 C.F.R. § 1208.20 "allows discretion." *Id.* at 258-59 ("I'm not sure that [§ 1208.20] allows discretion does it?"). Zheng's attorney argued that the IJ had discretion whether to enter such a finding, and that Zheng should be treated leniently because she had voluntarily come forward with the truth more than two years earlier and was only eighteen when she entered the United States. By contrast, the government took the position that frivolousness

---

179-80. Additionally, Zheng was provided a written copy of the warning.

4

findings are "not discretionary" and that "if something falls within [the] definition [of a frivolous application], then the Court shall make such a determination." *Id*. at 261.

In an oral decision entered on the same day as the merits hearing, the IJ agreed that Zheng's youth and forthrightness were "favorable factors," but held that he lacked discretion under the statute and implementing regulations not to enter a frivolousness finding. *Id*. at 193. He also concluded that Zheng's withdrawal of her false application had no effect on the applicability of the frivolousness bar. Accordingly, because he found that Zheng deliberately made a materially false asylum application after receiving adequate warning of the consequences, the IJ imposed a frivolousness finding against her.[2] The BIA affirmed the IJ's decision without opinion on August 27, 2004. Zheng timely appealed.

By opinion dated February 1, 2008, this Court found that Zheng's petition deliberately contained fabricated material elements and that she had received the required procedural safeguards. *Mei Juan Zheng*, 514 F.3d at 180-81. Nevertheless, this Court vacated the BIA's frivolousness finding and remanded the case to the BIA to consider two questions. *Id.* at 181.

First, the Court asked the Board to determine whether an "IJ's authority to 'determine[] that an alien has knowingly made a frivolous application for asylum' [is] limited to circumstances in which the IJ makes 'a final determination on such application.'" *Id.* (emphasis omitted). This question arose from the Court's observation that there are at least two ways to interpret § 1158(d)(6), which states that an "alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application." *Id.* (emphasis omitted). Section 1158(d)(6) could be read to preclude a frivolousness finding on a

_____

[2] The IJ also rejected Zheng's claim for withholding of removal under the Convention Against Torture. Zheng has not pursued that claim on appeal.

withdrawn application, as there has been no "final determination" on such an application. *Id.* Alternatively, the Court noted that § 1158(d)(6) may permit IJs to make frivolousness findings on withdrawn applications. *Id.* Under this interpretation, IJs would not be limited to making frivolousness findings on applications *pending* before them. *Id.*

Second, the Court requested that the Board consider whether "an IJ retains any discretion under 8 U.S.C. § 1158(d)(6) to decline to make a frivolousness finding even if the IJ finds that the statutory and regulatory conditions for frivolousness have been met." *Id.* at 182. Although the IJ who decided Zheng's case found that he lacked discretion, this Court noted that other IJs have not considered themselves "bound to make findings of frivolousness simply because an applicant has admitted to deliberately making false material statements in a pending or prior asylum application." *Id.* at 183. Further, this Court recognized that the "statutory and regulatory language is not as unambiguous as the IJ's decision [in this case] suggests." *Id.*

By unpublished opinion dated August 30, 2010 (the "August 30 Opinion"), the Board found that the first issue raised by this Court had been resolved by its precedential decision *Matter of X-M-C-*, 25 I. & N. 322 (B.I.A. 2010). There, the BIA held that the INA and its regulations permit IJs to enter frivolousness findings on any filed application, regardless of whether it has been withdrawn, because a frivolousness finding itself constitutes a "final determination on such application."

As for this Court's second question, the Board opined that an IJ does *not* retain discretion to decline to enter a frivolousness finding once he determines that the alien has filed a frivolous application. In support of its decision, the Board first argued that while no language in the INA or its implementing regulations renders the frivolousness determination discretionary, the use of the term "shall" in 8 U.S.C. § 1158(d) supports the conclusion that a frivolousness finding must

6

be entered if certain safeguards have been provided. Next, turning to those "circumstances in which it appears that Immigration Judges have declined to make frivolous application findings despite indications that material portions of an application have been fabricated," the BIA explained:

> [s]uch rulings may occur due to factual findings made by an Immigration Judge that particular elements of the requirements set forth in section 208(d)(6) of the Act, section 1208.20 of the regulations, or *Matter of Y-L-*[, 24 I. & N. Dec. 151 (BIA 2007)], have not been satisfied. The law also is clear that while an adverse credibility determination may trigger a frivolous application inquiry, an adverse credibility determination does not necessitate such an inquiry. An Immigration Judge may determine, based on the circumstances in an individual case, that an adverse credibility finding does not warrant an inquiry or determination in to whether an application is frivolous. This is particularly true if neither party requests that the court make such an inquiry.

Special App. 5 (internal citation and footnote omitted). Zheng timely filed this appeal.

## DISCUSSION

On appeal, Zheng challenges the BIA's responses to each of the questions raised by this Court in its prior opinion. After describing the relevant statutory and regulatory framework as well as the applicable standard of review, we consider each issue in turn. Ultimately, we hold that the BIA's decision that a withdrawn application can serve as the basis of a frivolousness finding is reasonable, but that its conclusion that the IJ lacked discretion not to enter such a finding is unpersuasive.

I.      Statutory and Regulatory Provisions

Section 208(d)(6) of the INA, 8 U.S.C. § 1158(d) ("§ 1158(d)"), provides in relevant part:

> (6) *Frivolous applications*
>
>> If the Attorney General determines that an alien *knowingly made a frivolous application for asylum* and the alien has received the notice

7

under paragraph 4(A), the alien *shall be permanently ineligible for any benefits* under this chapter, effective *as of the date of a final determination on such application*.

8 U.S.C. § 1158(d) (emphasis added).[3]

The relevant regulation, 8 C.F.R. § 1208.20 ("§ 1208.20") states:

For applications filed on or after April 1, 2007, an applicant is subject to the provisions of section 208(d)(6) of the Act only if a final order by an immigration judge or the Board of Immigration Appeals specifically finds that the alien knowingly filed a frivolous asylum application. For purposes of this section, an asylum application is frivolous if any of its material elements is deliberately fabricated. Such finding shall only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

8 C.F.R. § 1208.20. Thus, as this Court previously explained, "if an IJ determines that an alien knowingly made an application for asylum with one or more deliberately fabricated elements, and the alien received proper notice, the alien is permanently barred from receiving most benefits under the immigration laws." *Mei Juan Zheng*, 514 F.3d at 180.

II.     Standard of Review

"Where, as here, the BIA adopts the [immigration judge's] reasoning and offers additional commentary, we review the decision of the [immigration judge] as supplemented by the BIA." *Mahmood v. Holder*, 570 F.3d 466, 469 (2d Cir. 2009) (internal quotation marks omitted). "We grant *Chevron* deference to the BIA's construction of the INA. Under the *Chevron* standard, . . . [w]hen the INA is silent or ambiguous, . . . we must defer to any reasonable interpretation of the statute adopted by the [BIA] as the entity charged by Congress with the statute's enforcement." *Boluk v. Holder*, 642 F.3d 297, 301 (2d Cir. 2011) (internal

---

[3] An alien who has made a frivolous asylum application may still seek withholding of removal. 8 C.F.R. § 1208.20.

citations, alterations and quotation marks omitted); *see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).  To defer to an agency's interpretation of a statute as reasonable, this Court "need not conclude that the agency construction was the only one it permissibly could have adopted . . . or even the reading the court would have reached if the question initially had arisen in a judicial proceeding."  *Xia Fan Huang v. Holder*, 591 F.3d 124, 129 (2d Cir. 2010) (quoting *Chevron*, 467 U.S. at 843 n.11).  Additionally, an "agency's interpretation of its [own] regulations [is] entitled to controlling weight unless it is plainly erroneous or inconsistent with the regulation."  *Forest Watch v. U.S. Forest Serv.*, 410 F.3d 115, 118 (2d Cir. 2005) (internal quotation marks omitted).

However, an "'administrative implementation of a particular statutory provision [only] qualifies for *Chevron* deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, *and that the agency interpretation claiming deference was promulgated in the exercise of that authority.*'"  *Rotimi v. Gonzales*, 473 F.3d 55 (2d Cir. 2007) (per curiam) (emphasis added) (quoting *United States v. Meade Corp.*, 533 U.S. 218, 226-27 (2001)).  Because there is no indication that the BIA's nonprecedential opinions are "promulgated under its authority to make rules carrying the force of law, we do not accord [them] *Chevron* deference."  *Rotimi,* 473 F.3d at 57 (internal quotation marks omitted); *see also Varughese v. Holder*, 629 F.3d 272, 274 (2d Cir. 2010) (per curiam) ("While the BIA's interpretation of immigration statutes is generally entitled to *Chevron* deference, interpretations in non-precedential unpublished BIA decisions . . . are not so entitled.") (internal quotation marks omitted).

9

III.     An IJ's Authority to Base a Frivolousness Finding on a Withdrawn Application

This Court has already held that the language in the INA concerning whether a frivolousness finding can be based on a withdrawn application is ambiguous. *Mei Juan Zheng*, 514 F.3d at 181-82 (noting that "language [in § 1158(d)(6)] is susceptible of at least two meanings" and that "[e]ach view is backed by case law from other circuits"). And, on remand, the BIA determined that this issue was resolved by its precedential decision, *Matter of X-M-C-*, which held that "the only action required to trigger a frivolousness inquiry is the filing of an asylum application" and that such findings can be entered after any final order addressing whether the application was frivolous, not only orders adjudicating the merits of the application. 25 I. & N. Dec. at 324-25. Thus, this Court is bound to defer to the BIA's interpretation of § 1158(d)(6) as announced in *Matter of X-M-C-* unless its reading of the statute is unreasonable. *Mizrahi v. Gonzales*, 492 F.3d 156, 158 (2d Cir. 2007) ("[W]here . . . [a] challenged unpublished decision relies on a binding published decision, *Chevron* deference will extend to that earlier decision's reasonable resolution of statutory ambiguity.").

There is no basis for this Court to find that the BIA's interpretation of § 1158(d)(6) in *Matter of X-M-C-* is unreasonable. By holding that § 1158(d)(6) should be read to emphasize the filing of an asylum application, as opposed to its adjudication, *Matter of X-M-C-*, 25 I. & N. Dec. 324-25, the BIA adopted one of the possible interpretations of the statute acknowledged by this Court in *Mei Juan Zheng*, 514 F.3d at 181. *See also* 8 U.S.C. § 1158(d)(6) (providing that a frivolous finding is appropriate if "an alien has knowingly *made* a frivolous application for asylum and the alien has received [notice of the consequences]") (emphasis added); 8 C.F.R. § 1208.20 (providing that a frivolousness finding is appropriate if an IJ or the BIA "finds that the alien knowingly *filed* a frivolous asylum application") (emphasis added). Significantly, this

interpretation has also been adopted by several of our sister circuits. *See, e.g.*, *Chen v. Mukasey*, 527 F.3d 935, 943 (9th Cir. 2008) (finding that "withdrawal of an asylum application does not obviate the need for an IJ to determine whether a false application should be deemed frivolous"); *Lazar v. Gonzales*, 500 F.3d 469, 476-77 (6th Cir. 2007) (holding that frivolousness finding is not mooted by withdrawal because "if that were the law, every petitioner seeking relief under the INA would have an incentive to lie in their submissions because there would be no penalties for doing so").

Additionally, the BIA offered a reasonable explanation for its view that "final determination" in §1158(d) should not be interpreted to require a final determination on the merits of the frivolous asylum application, but encompasses *any* "final order determining that an asylum application is frivolous." *Matter of X-M-C-*, 25 I. & N. at 325. According to the Board, an alternative reading would permit an alien who testified falsely and then withdrew his application to "escape the consequences deliberately chosen by Congress to prevent such abuse of the system." *Id.* at 326; *see also Mei Juan Zheng*, 514 F.3d at 181 (recognizing that "allow[ing] an alien to withdraw a materially false application on the eve of a decision without suffering any adverse consequences for the falsehood . . . would undermine the potency of the frivolousness bar as a deterrent to lying") (internal citation omitted).

On appeal, Zheng first contends that because one of the definitions of "made" is to be "assured of success," in order to have "made" a frivolous asylum application, an alien's application must have been "assured of success." Pet'r's Br. 10. This argument lacks merit. The term "made" has multiple meanings. *See Webster's Third New International Dictionary* 1356 (1993) (defining "made" to mean "artificially produced by a manufacturing process," "invented fictitious," "assured of success <now I am a ~ man forever . . . >," "fully trained,"

11

"specially fitted, designed, or adapted" ). As petitioner conceded at oral argument, courts regularly state that a motion has been "made." Rather than suggesting that the moving party will prevail, this statement is commonly understood to mean that an application has been *filed* for the court's consideration. Petitioner has failed to identify any basis for finding that the Board acted unreasonably by interpreting "made" to mean "filed." Thus, the Board's interpretation must be upheld.

Next, Zheng asserts that the Board erred in holding that a frivolous finding may qualify as a "final determination" because such a finding does not comport with the definition of a determination, which is a "judicial decision settling and ending a controversy." Pet'r's Br. 10-11. However, as the Board noted in *Matter of X-M-C-*, a frivolous finding does in fact "settle or end a controversy" as it renders pointless any further determination on the merits of an application. 25 I. & N. at 324-25. Accordingly, even under the definition of "determination" that Zheng advocates, the Board's conclusion that a frivolousness finding constitutes a "final determination" should be affirmed.

Finally, Zheng argues that her application "cannot be found frivolous because the fabrication that was contained in the withdrawn application was not discovered "during the course of [the] proceedings" as is required by 8 C.F.R. § 1208.20. Pet'r's Br. 13. This argument also fails because nothing in § 1208.20 mandates discovery of the fabrication that is the basis for a frivolousness finding "during the course of the proceedings" relating to *that* application.

IV.     An IJ's Discretion Whether to Engage in a Frivolousness Inquiry

The IJ noted that "favorable factors" in Zheng's case may have led him to decline to consider whether a frivolousness finding should be entered against her, but that he lacked discretion not to enter such a finding when the statutory and regulatory conditions for

12

frivolousness have been met. In its unpublished August 30 Opinion, the BIA affirmed the IJ's decision, holding that "an Immigration judge does not retain discretion under [§ 1158(d)] to decline to make a frivolous application finding once the Immigration Judge determines that the alien has knowingly filed an application that is frivolous, *i.e.,* that the application contains a material element or elements that are deliberately fabricated." Special App. 4. On appeal, Zheng challenges the IJ and the BIA's conclusion.

This Court has already held that there are multiple ways to interpret the INA provisions concerning an IJ's discretion to enter a frivolousness finding. *Mei Juan Zheng*, 514 F.3d at 182. Accordingly, on remand, had the BIA entered a published, precedential opinion, that opinion would be subject to review under the *Chevron* doctrine. *See Varughese*, 629 F.3d at 274. The BIA, however, declined to do so. Instead, it entered an unpublished, non-precedential opinion that, at most, is entitled deference to the extent that it is persuasive. *See Tchitchui v. Holder*, 657 F.3d 132, 135 n.5 (2d Cir. 2011) (per curiam).[4] We are not persuaded.

There are two possible points at which an IJ may exercise discretion before entering a frivolousness finding: (1) when deciding whether to investigate if the preconditions for entering such a finding have been met; and (2) after the inquiry has begun, *i.e.*, once an IJ has determined that an application contains a material misstatement and that the applicant was adequately warned, until the moment the IJ enters the finding. The BIA's August 30 Opinion correctly

---

[4] This Court has not yet resolved whether unpublished BIA opinions interpreting immigration statutes are entitled to *Skidmore* deference, or whether they are reviewed *de novo*. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (deferring to agency interpretations to the extent they have "power to persuade"). We need not resolve the question now, because neither the IJ nor the BIA's decision contains any analysis with persuasive power. *See Tchitchui*, 657 F.3d at 135 n.1 (noting that standard of review given to unpublished BIA decisions remains an open question in this Circuit); *Dobrova v. Holder*, 607 F.3d 297, 300 (2d Cir. 2010) (same).

acknowledges that IJs regularly exercise discretion when deciding whether to initiate a frivolousness inquiry. Indeed, the August 30 Opinion states that:

> [t]he law . . . is clear that while an adverse credibility determination *may trigger* a frivolousness application inquiry, an adverse credibility determination *does not necessitate* such an inquiry. An immigration judge may determine, based on the circumstances in an individual case, that an adverse credibility finding does not warrant an inquiry or determination into whether an application is frivolous. *This is particularly true if neither party requests that the court make such an inquiry*.

Special App. 5 (internal citation omitted) (emphasis added). The August 30 Opinion is thus consistent with the text of § 1158(d) and 8 C.F.R. § 1208.20, neither of which compels IJs to engage in a frivolousness inquiry anytime they suspect that the conditions for entering such a finding are present.

Even though Zheng admitted to having filed a false application in this case, the frivolousness inquiry did not begin until the IJ started his analysis. Indeed, the government conceded at oral argument that an IJ may choose not to engage in a frivolousness analysis – and thus not enter a frivolousness finding – even though a party raises the issue. Nothing in the record here, however, suggests that the IJ understood that he had this discretion once the government raised frivolousness as an issue.[5] Thus, when the IJ in Zheng's case asked the Immigration and Naturalization Service attorney whether he had discretion not to enter a finding that the original application had been frivolous, the answer concededly should have been "yes." Accordingly, the petition for review as to this issue must be granted.

---

[5] In the August 30 Opinion, the Board held that once a frivolousness inquiry has begun, an IJ must enter a frivolousness finding if he concludes that an alien filed an asylum application containing a material misstatement after he received the proper warnings. It is unnecessary for us to decide whether this conclusion is persuasive because, in this case, the IJ did not understand that he could choose not to initiate a frivolousness inquiry.

**CONCLUSION**

For the foregoing reasons, the petition for review is **DENIED** with respect to the Board's determination that a withdrawn asylum application may serve as the basis of a frivolousness finding and **GRANTED** as to the Board's conclusion that the IJ lacked discretion whether to engage in a frivolousness inquiry. Accordingly, we **VACATE** the BIA's August 30 Opinion and **REMAND** to the BIA for further proceedings consistent with this opinion.