In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1648

SHARAREH SHOJAEDDINI, *et al.*,

*Petitioners*,

*v.*

JEFFERSON B. SESSIONS III, Attorney
General of the United States,

*Respondent.*

Petition for Review of an Order of the
Board of Immigration Appeals.
No. A078-208-227
No. A078-208-228

ARGUED NOVEMBER 6, 2017 — DECIDED JANUARY 11, 2018

Before BAUER, KANNE, and ROVNER, *Circuit Judges*.

BAUER, *Circuit Judge.* Sharareh Shojaeddini and her young
daughter, Maryam ("Petitioners"), were placed in removal
proceedings in 2008 after the Department of Homeland
Security ("DHS") discovered that Sharareh had made material

misrepresentations on her adjustment of status application, as well as her previously filed asylum application. Petitioners applied for a fraud waiver under 8 U.S.C. § 1227(a)(1)(H), which the Immigration Judge denied, finding that the fraud waiver did not apply to frauds committed at the adjustment of status.

Before the Board of Immigration Appeals (BIA) decided Petitioners' appeal, DHS filed a motion to remand to the IJ so he could reconsider another aspect of the fraud waiver issue that he had declined to address: whether Sharareh had filed a frivolous asylum application, which would make her permanently ineligible for any immigration benefit. 8 U.S.C. § 1158(d)(6). On remand, the IJ found that Sharareh had filed a frivolous asylum application, making her permanently ineligible for the fraud waiver. Petitioners appeal, arguing that the BIA procedurally erred in granting DHS' motion to remand. We conclude that the BIA did not err, and deny the petition for review.

## I.  BACKGROUND

Sharareh is a native of Iran. Her family fled Iran in 1986 to escape persecution, and eventually settled in Norway. While there, Sharareh became a naturalized citizen of Norway in 1994, and married a Norwegian citizen in 1996. Sharareh and her family briefly returned to Iran in 1997, but promptly went back to Norway after facing further persecution. She gave birth to Maryam in Norway in 1999.

In 1999, using their Norwegian passports, Sharareh and Maryam entered the United States for the first time. Sharareh filed an I-589 application for asylum in 2000, listing Maryam as

a derivative. Her application contained several material omissions and misrepresentations. Sharareh noted only that she was an Iranian national and failed to disclose that she was a Norwegian citizen and had been residing there since 1986. Additionally, she falsely stated that she was married to an Iranian citizen who had been detained and tortured there. Sharareh's application also described persecution she and her family had faced from Iranian authorities, including unlawful arrests and sexual abuse.

An IJ in New Jersey granted Sharareh's asylum application on February 8, 2001, and granted Maryam asylum status as a derivative. After receiving asylum status, Petitioners traveled to and from Norway on several occasions between 2001 and 2002 using their Norwegian passports.

On March 4, 2002, Sharareh, on behalf of herself and Maryam, applied for an adjustment of status. In the application, Sharareh again omitted that she was a Norwegian citizen. She also omitted the fact that she had been traveling to and from Norway since 1999. While her application was pending, Petitioners continued to travel to and from Norway. On April 26, 2006, the application was granted, and their statuses were adjusted to lawful permanent residents.

In 2008, DHS began investigating whether Sharareh had committed asylum fraud. On December 18, 2008, Petitioners were served with Notices to Appear in immigration court and charged with removability as inadmissible aliens under 8 U.S.C. § 1227(a)(1)(A): Sharareh for procuring an immigration benefit by fraud or willful misrepresentation of material fact, under 8 U.S.C. § 1182(a)(6)(C)(i); and, Maryam for not being in

possession of a valid entry document at the time of her entry or adjustment of status, under 8 U.S.C. § 1182(a)(7)(A)(i)(I). At a hearing before the IJ, Sharareh admitted the allegations, and the IJ found them removable.

Petitioners subsequently sought relief under the fraud waiver, 8 U.S.C. § 1227(a)(1)(H). An alien who is removable on the grounds that she was "inadmissible at the time of admission" may obtain a fraud waiver if (1) the alien is in possession of an immigrant visa or equivalent document, and is otherwise admissible; or, (2) the alien is a spouse, parent, son or daughter of a U.S. citizen or of an alien lawfully admitted for permanent residency. 8 U.S.C. § 1227(a)(1)(H)(i)(I–II). Sharareh sought the fraud waiver under the first provision, while Maryam sought the fraud waiver under the second.

The IJ denied Petitioners relief under the fraud waiver on February 2, 2012. The IJ gave two reasons for its denial: first, Petitioners were statutorily ineligible from relief because the fraud waiver is not available for frauds committed at the time of an adjustment of status; and, second, even if the fraud waiver could apply to the adjustment of status, Petitioners were not "otherwise admissible" because of the misrepresentations on Sharareh's asylum application, as well as Petitioners' failure to disclose the multiple entries into the U.S. on their Norwegian passports. Importantly, the IJ declined to consider DHS' argument that Sharareh was statutorily barred from all immigration relief, including the fraud waiver, because she filed a frivolous asylum application. *See* 8 U.S.C. § 1158(d)(6) ("If the Attorney General determines that an alien has knowingly made a frivolous application for asylum and the alien has received the notice under paragraph (4)(A), the alien shall be

permanently ineligible for any benefits under this chapter
… .").

Petitioners appealed to the BIA. DHS filed an opposition
brief contending that the IJ had correctly found them ineligible
for the waiver, but also asked the BIA to find that Sharareh
filed a frivolous asylum application making her permanently
ineligible for any immigration benefit.

Before the BIA issued a decision, DHS filed a motion to
remand to the IJ. In the motion, DHS withdrew its arguments
in support of the IJ's decision. Specifically, DHS conceded, in
light of new legal authority, that an IJ may issue a fraud waiver
for frauds committed at the time of an adjustment of status.
DHS requested that on remand the IJ enter a new decision
addressing the frivolous asylum application argument.
Petitioners opposed the motion, arguing that DHS waived the
right to have the issue addressed by not cross-appealing to the
BIA. Moreover, in light of DHS' concession on the applicability
of fraud waivers to an adjustment of status, Petitioners
requested that the BIA remand with instructions for the IJ to
consider whether they merit the waiver as an exercise of
discretion.

The BIA remanded the case to the IJ on October 28, 2014,
"to issue a new decision that makes the necessary findings of
fact and legal conclusions with respect to the DHS' argument
that [Sharareh] knowingly filed a frivolous asylum application
that renders her permanently ineligible for [any immigration
benefit]." The BIA found that DHS had properly preserved the
issue by raising it in their opposition brief before requesting the
remand. The BIA instructed the IJ that "the new decision on

remand should address any additional issues, including any remaining issues regarding [Petitioners'] eligibility for relief from removal." One member of the BIA dissented.

On remand, Sharareh argued that while parts of her asylum application contained omissions and misrepresentations, she did not deliberately fabricate the application. DHS argued that her failure to disclose the fact that she was a Norwegian citizen, along with other misrepresentations, were done deliberately, and that they materially affected the grant of asylum.

On December 1, 2015, the IJ again denied relief under the fraud waiver, finding that Sharareh had made a knowing frivolous asylum application, and thus, was ineligible for any immigration relief. Additionally, although the frivolous asylum application bar did not apply to Maryam, she still did not meet either of the two criteria to qualify for the fraud waiver. *See* 8 U.S.C. § 1227(a)(1)(H)(i)(I–II).

Petitioners appealed to the BIA again, and on March 7, 2017, the BIA affirmed. This appeal followed.

## II.  DISCUSSION

At the onset, we must note that Petitioners do not challenge the IJ's determination that they are not eligible for the fraud waiver, and are thus removable, nor the BIA's affirmance of that decision. Specifically, Sharareh is not challenging the finding that she deliberately filed a frivolous asylum application, nor is Maryam challenging the conclusion that she failed to satisfy the eligibility requirements for the fraud waiver. Rather, Petitioners contest the procedural steps that led the

BIA to remand the case to the IJ for a determination on the frivolous asylum application.

We review the BIA's decision to grant DHS' motion to remand for an abuse of discretion. *Boykov v. Ashcroft*, 383 F.3d 526, 529–30 (7th Cir. 2004). The BIA's decision to grant the motion to remand will be upheld unless it was granted without any rational explanation, or it "inexplicably departed from established policies." *Id.* at 530.

Initially, Petitioners argue that the BIA ignored its own practice of declining to reopen cases unless new evidence has been presented. *See* 8 C.F.R. § 1003.2(c)(1) ("A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing … ."). However, DHS did not file a motion to reopen the case; it filed a motion to remand while Petitioners' appeal was pending before the BIA. *See* 8 C.F.R. § 1003.2(c)(4) ("A motion to reopen a decision rendered by an Immigration Judge … that is filed while an appeal is pending before the Board, may be deemed a motion to remand for further proceedings before the Immigration Judge … ."). A motion to reopen implies that the case has been closed, or that the BIA has reached a final decision. *See* 8 C.F.R. § 1003.2(a) (noting that a motion to reopen or reconsider can be made in "any case in which a decision has been made by the Board"). Because there is a meaningful distinction between the two motions, the BIA was correct in not treating DHS' motion as a motion to reopen or holding it to the new evidence standard.

Petitioners also argue that the BIA erred in granting the motion to remand because DHS had not preserved the frivolous asylum application issue by cross-appealing the IJ's ruling. This argument also fails. As the BIA noted, DHS was the prevailing party before the IJ. A prevailing party need not file a cross-appeal "so long as that party seeks to preserve, and not to change, the judgment." *Nw. Airlines, Inc. v. Cty. of Kent, Mich.*, 510 U.S. 355, 365 (1994). DHS' opposition brief sought the affirmance of the IJ's decision, while also arguing that the record supported a frivolous asylum application finding. This was the proper way to preserve the issue on appeal. The BIA correctly concluded that by raising the alternative ground in their opposition brief, DHS did not waive the frivolous asylum argument.

Finally, Petitioners argue that by granting the motion to remand, the BIA compelled the IJ to make a frivolous asylum application finding. However, a plain reading of the BIA's order granting the motion to remand does not support Petitioners' interpretation; the BIA sent the case back to the IJ "to issue a new decision that makes the necessary findings of fact and legal conclusions with respect to DHS' argument that [Sharareh] filed a frivolous asylum application … ." While the remand instructed the IJ to issue a new opinion, it did not compel the IJ to conclude that Sharareh filed a frivolous asylum application. The remand gave the IJ discretion as to the factual findings and legal conclusions, and the scope of the remand was broad. The BIA instructed the IJ to consider any additional issues, including issues regarding Petitioners' eligibility for relief from removal.

On remand, the parties submitted briefs and the IJ conducted a new hearing. In Petitioners' brief before the IJ on remand, Petitioners cited to a Second Circuit case which held that the relevant statute and regulations do not compel an IJ to reach a finding on a frivolous asylum application. *See Zheng v. Holder*, 672 F.3d 178, 185–87 (2d Cir. 2012). This was an additional issue regarding relief from removal that the IJ could consider in the scope of the remand. In its discretion, the IJ found that Sharareh had deliberately filed a frivolous asylum application, thus barring her from any immigration relief. Nothing in the IJ's decision indicates that he was compelled by the BIA to reach that finding.

## III.  CONCLUSION

Since the BIA did not procedurally err in granting the motion to remand, and the Petitioners do not make substantive challenges to the decisions on their removal, the petition is DENIED and the BIA's decision is AFFIRMED.