Aththidiya Liyanage v. Garland

BIA
Nelson, IJ
A087 976 823

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of April, two thousand twenty-four.

PRESENT:
        RAYMOND J. LOHIER, JR.,
        RICHARD J. SULLIVAN,
        MARIA ARAÚJO KAHN,
        *Circuit Judges.*

_____

NIROSHA SAJEEWANI ATHTHIDIYA LIYANAGE,
        *Petitioner*,

        v.                               **22-6009**
                                     **NAC**

MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,
        *Respondent*.

_____

**FOR PETITIONER:**            Visuvanathan Rudrakumaran, Esq., Law Office of Visuvanathan Rudrakumaran, New York, NY.

**FOR RESPONDENT:**            Brian M. Boynton, Principal Deputy Assistant Attorney General; Jonathan A. Robbins, Assistant Director; Erik R. Quick, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Nirosha Sajeewani Aththidiya Liyanage, a native and citizen of Sri Lanka, seeks review of a December 7, 2021 decision of the BIA affirming an April 24, 2018 decision of an Immigration Judge ("IJ") denying her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Aththidiya Liyanage*, No. A 087 976 823 (B.I.A. Dec. 7, 2021), *aff'g* No. A 087 976 823 (Immigr. Ct. N.Y.C. Apr. 24, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified and supplemented by the BIA. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005); *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's factual

findings, including adverse credibility determinations, for substantial evidence, and we review questions of law and the application of fact to law *de novo*. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**I.      Adverse Credibility Determination**

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." *Id*. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao*, 891 F.3d at 76.

Substantial evidence supports the agency's adverse credibility determination. Liyanage does not dispute that her original 2010 asylum application was inconsistent with her 2018 amended application in material respects. The two applications gave different dates for her arrival in the United States (one bringing her application within the one-year time limit for applying for asylum, the other not) and provided different accounts of when, why, how, and by whom she was harmed in Sri Lanka. *See* 8 U.S.C. § 1158(a)(2)(B) (setting one-year filing deadline). In her first application, Liyanage alleged that she came to the United States in 2009 after she was raped by army officers seeking her (then-missing) husband for alleged political crimes. But her 2018 application claimed that she arrived in the United States in 2002 after being beaten (but not raped) by drug dealers with government connections looking for her husband (who had remained in contact with her from the United States).

Liyanage argues that the agency cannot rely on false statements in a withdrawn document (or inconsistencies those false statements create with the remainder of the record) to assess credibility, and that her initial false claims are not probative of her credibility because they came to light because of her confession. We disagree on both points. The agency can consider an applicant's

4

written statements "whenever made." *Id.* § 1158(b)(1)(B)(iii). "[A] single false document or a single instance of false testimony may (if attributable to the petitioner) infect the balance of the [petitioner's] uncorroborated or unauthenticated evidence." *Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007). And Liyanage did not take action to correct her application until counsel for the U.S. Department of Homeland Security ("DHS") moved for an order directing her to explain suspicious similarities between her original application and that of another applicant.

Nor was the agency required to accept Liyanage's thin explanations that her overbearing husband pressured her to lie and that her first attorney refused to help her correct her application. Indeed, Liyanage reaffirmed the initial application by signing it before an IJ after her husband died in 2011, and she did not take steps to correct it until 2018, despite retaining new counsel in 2014. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (quotation marks and citation omitted)). And even if her updated explanation – that she initially lied because she wanted to keep her family in the

United States – were true, that still would not compel the conclusion that her most recent account is truthful.

Moreover, the agency did not err in finding that Liyanage failed to present reliable corroboration. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). The sole evidence to corroborate the amended application was an affidavit from Liyanage's mother. The agency reasonably gave that affidavit "little weight" because its author was an "interested part[y] . . . [not] available for cross-examination." *See Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020); *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) ("We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence."). Contrary to Liyanage's argument, the IJ was not required to contact her mother by telephone prior to making this evaluation, particularly as Liyanage never requested that her mother be allowed to testify. And while other interpretations are plausible, the record supports the agency's finding that Liyanage testified that she was responsible for the contents of her mother's affidavit. *See Siewe*, 480 F.3d at 167 ("Where there are

6

two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (internal quotation marks and citation omitted)).

Liyanage also argues that the agency failed to consider background evidence that corroborated her claim. But there is no indication that the agency overlooked this evidence, which it explicitly discussed in the context of the CAT claim. Liyanage does not explain how such evidence could have rehabilitated her credibility given the initial false claim. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) ("[W]e presume that an IJ has taken into account all of the evidence before [her], unless the record compellingly suggests otherwise."). Liyanage presented country conditions evidence related to violence surrounding drug smuggling and against political figures in Sri Lanka. But she offered no credible evidence that her family had connections to those individuals or to drug smuggling.

In sum, the false statements, inconsistent claims, and lack of reliable corroboration provide substantial evidence for the agency's adverse credibility determination. *See Likai Gao*, 968 F.3d at 145 n.8 ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully."); *Xiu*

7

*Xia Lin*, 534 F.3d at 167; *Biao Yang*, 496 F.3d at 273. Liyanage does not argue that evidence beyond her testimony independently satisfied her burden for any form of relief. Accordingly, because "the same factual predicate underlies [her] claims for asylum, withholding of removal, and protection under the CAT, [the] adverse credibility determination forecloses all three forms of relief." *Hong Fei Gao*, 891 F.3d at 76.

## II. Frivolous Asylum Application

"If the Attorney General determines that an alien has knowingly made a frivolous application for asylum . . . , the alien shall be permanently ineligible for any benefits under this chapter, effective as of the date of a final determination on such application." 8 U.S.C. § 1158(d)(6). Such a finding may be based on an application that has been withdrawn. *See Mei Juan Zheng v. Holder*, 672 F.3d 178, 184–85 (2d Cir. 2012). An asylum application is frivolous if "[a]ny of the material elements . . . is deliberately fabricated." 8 C.F.R. § 1208.20(a)(1). The BIA has set forth four procedural safeguards that an IJ must follow in rendering frivolousness determinations:

(1) notice to the alien of the consequences of filing a frivolous application; (2) a specific finding by the Immigration Judge or the Board that the alien knowingly filed a frivolous application; (3) sufficient evidence in the record to support the finding that a

8

material element of the asylum application was deliberately fabricated; and (4) an indication that the alien has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim.

*Biao Yang*, 496 F.3d at 275 (quoting *In re Y-L-*, 24 I. & N. Dec. 151, 155 (B.I.A. 2007));

*see also* 8 U.S.C. § 1158(d)(4)(A) (requiring notice to the applicant of the consequences of filing a frivolous application).

The last three of those requirements are not in dispute. The IJ and BIA made specific findings that Liyanage knew her initial application contained false statements. Liyanage admitted that she knew the statements were false, and the false statements were "material" because they related to her eligibility for asylum and the basis of her claim of past persecution. She was given an opportunity to explain those initial statements in her amended application and during her hearing.

But Liyanage disputes the agency's conclusion that she received adequate notice of the consequences of such a filing, and claims that the agency also failed to consider whether the finding should not be entered as a matter of discretion. The record does not support these arguments. First, substantial evidence supports the agency's finding that Liyanage received notice of the consequences of filing a frivolous application. Prior to filing her first application in 2010, she

signed a certification that its contents were true. The certification contained a warning that applicants found to have knowingly made a frivolous asylum application will be permanently ineligible for benefits under the Immigration and Nationality Act. She signed the application again at her 2010 asylum interview, below an acknowledgement that she was aware of this consequence and could not avoid it on the ground that she was advised to provide false information. She signed the certification a third time before an IJ at her July 2012 hearing, after the IJ granted DHS counsel's request for an adjournment to investigate whether an unrelated case raised strikingly similar facts and claims. Liyanage also orally affirmed that her application was accurate at that hearing. The written warning of the consequences of filing a frivolous application on the signature page of an asylum application is generally sufficient to satisfy the notice requirement; an oral warning is not required.[1] *Niang v. Holder*, 762 F.3d 251, 254–55 (2d Cir. 2014); *see also* 8 C.F.R. § 1208.3(c)(2) (stating that an applicant's signature on an asylum

---

[1] The BIA noted that Liyanage was present with an interpreter when the IJ gave a warning about frivolous filings to her son. That warning was rendered after Liyanage filed her application and signed it before the IJ at the 2012 hearing, so it is not relevant to her knowledge when she filed. However, it is relevant to her knowledge of the consequences during the nearly six-year period after that warning when she did not correct her application.

application "establishes a presumption that the applicant is aware of the contents of the application"). However, "if an alien plausibly claims and presents credible evidence that [she] was unable to understand the printed Frivolousness Warning on [her] signed asylum application, the presumption of understanding established by [her] signature may not be determinative of notice." *Ud Din v. Garland*, 72 F.4th 411, 428 (2d Cir. 2023). That is not the case here because the only evidence that Liyanage—who filed her original application through counsel—was unaware of its contents was her own incredible testimony, and, unlike in *Ud Din*, she did not make an explicit sworn statement that she was unaware of the consequences of filing a false asylum claim. *See id.* And contrary to her argument here, the agency did not limit the adverse credibility determination to her allegations of past persecution; nor was it required to do so. *See Siewe*, 480 F.3d at 170 ("An IJ may, either expressly or impliedly, rely on [the maxim false in one thing, false in everything] to discredit evidence that does not benefit from corroboration or authentication independent of the petitioner's *own* credibility."). The record does not compel the conclusion that the agency should have credited her testimony that she was unfamiliar with this aspect of her application over her earlier sworn statements that she was familiar with its contents. *See* 8 U.S.C. § 1252(b)(4)(B).

Second, while an IJ has the discretionary authority not to enter a frivolousness finding, *see Mei Juan Zheng*, 672 F.3d at 186–87, the record reflects that the IJ understood that authority. The IJ acknowledged that authority during a colloquy immediately before the oral decision. The IJ did not expressly state that the ruling was discretionary, but she made findings relevant to exercising that discretion. The IJ noted that Liyanage engaged in a pattern of deception by reaffirming her false statements, that she did so even after her husband died, that she took no steps to correct her application for years after retaining new counsel, and that her desire to protect herself and her family did not outweigh the seriousness of her conduct. The IJ thus concluded that a favorable exercise of discretion was unwarranted.

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court
