# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 12, 2023

Lyle W. Cayce
Clerk

No. 22-60505

Yanci Liseth Munoz-De Zelaya; Jose Roberto Zelaya Guerrero; Jose Roberto Zelaya-Munoz; Yanci Mariela Zelaya-Munoz,

*Petitioners,*

*versus*

Merrick Garland, *U.S. Attorney General,*

*Respondent.*

_____

Appeal from the Board of Immigration Appeals
Agency Nos. A208 278 752,
A209 842 728, A209 842 729,
A209 842 730

_____

Before Willett, Engelhardt, and Oldham, *Circuit Judges.*
Per Curiam:

The petitioners in this immigration case are a husband and wife who applied for asylum and withholding of removal based on their membership in the proposed particular social group of "Salvadoran business owners." We agree with the Board of Immigration Appeals that this group is not cognizable under the immigration laws. Because petitioners failed to exhaust their remaining arguments before the Board, we DENY the petition for review.

No. 22-60505

I

Yanci Liseth Munoz-De Zelaya, her husband Jose Roberto Zelaya-Guerrero ("Guerrero"), and their two children are all natives and citizens of El Salvador.[1] The family entered the United States in increments, between 2015 and 2016. The Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") to Guerrero in 2015. The NTA charged him with removability as being present in the United States without authorization. DHS issued NTAs to each of Munoz-De Zelaya and the two children a year later, charging them also with removability as being present without authorization. Munoz-De Zelaya and Guerrero applied for asylum and withholding of removal. They included their two children as derivative beneficiaries of and riders on Munoz-De Zelaya's application.[2]

Guerrero's application cited multiple instances during which gang members intimidated him and extorted ever-increasing amounts of money from him at his business selling bicycle parts. When Guerrero could not pay the rising extortion fees after several months, a gang member threatened to kill him, and put a gun to his head. Guerrero did not report the attack to the police, because he believed that reporting would get him killed. Guerrero then left El Salvador for the United States. But because the family lacked the funds to travel together, Munoz-De Zelaya and the children remained for a spell.

Munoz-De Zelaya based her application on the extortion that she faced after she moved to a new town within El Salvador to escape intimidation following her husband's departure. According to Munoz-De

---

[1] Munoz-De Zelaya's opening brief renders her marital surname as "De-Zalaya," whereas the record renders her name as "De Zelaya." We use the latter.

[2] Because the children are derivative beneficiaries of and riders on Munoz-De Zelaya's application, we refer only to Munoz-De Zelaya.

No. 22-60505

Zelaya, three gang members began extorting her for money every month while she was selling bicycle parts in her new town's market. On one occasion, when she could not meet the gang's demands, gang members threatened to initiate her son into the gang, and to take her children to a home next door that the gang used to torture people. A gang member pointed a gun at her head during this incident. The gang members then searched her home for money, pulled Munoz-De Zelaya by her hair, and beat her, leaving her unconscious. Gang members also threatened to kill a neighbor who saw the attack unfold. The next day, Munoz-De Zelaya fled the country with her children. She did not report the incident to the authorities, because she believed that the police forces were corrupt and passed information to the gangs.

The immigration judge (IJ) denied the family asylum and withholding of removal, concluding that "extorted business owners" does not constitute a particular social group (PSG), that no showing of nexus is possible without a PSG, and that extortion is not persecution. The IJ also found that Munoz-De Zelaya and Guerrero had not testified that any family members experienced problems beyond those facing anyone living in El Salvador. And while the IJ determined that the family did have "subjectively valid fears" about returning to El Salvador, the IJ also determined that the fears were not "objectively reasonable." Finally, the IJ concluded that the family's testimony about the impossibility of relocation within El Salvador was "entirely speculative."

The Board of Immigration Appeals (BIA) dismissed the appeal, agreeing with the IJ's ruling that the family had not asserted a cognizable PSG. The BIA found it "unnecessary to address the respondents' remaining arguments on appeal as adjudication of those issues will not alter the outcome of these proceedings." Munoz-De Zelaya and Guerrero timely petitioned for our review.

## II

Munoz-De Zelaya and Guerrero challenge the denial of their applications for asylum and withholding of removal. We review the BIA's decision, and we consider the IJ's decision only to the extent it influenced the BIA. *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012). We consider legal questions de novo, and we review the factual determination that an individual is not eligible for asylum or withholding of removal for substantial evidence. *Id.*; *Chen v. Gonzales*, 470 F.3d 1131, 1134 (5th Cir. 2006). Under the substantial-evidence standard, reversal is improper unless the evidence not only supports a contrary conclusion but compels it. *Orellana-Monson*, 685 F.3d at 518.

## III

## A

To be eligible for asylum, an applicant must show, among other things, that "race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i); *accord Orellana-Monson*, 685 F.3d at 518. A particular social group is cognizable only if it is "(i) characterized by an immutable trait; (ii) definable with reasonable particularity; and (iii) socially distinct." *Garcia-Gonzalez v. Garland*, ___ F.4th ___, No. 22-60501, 2023 WL 5009266, at *3 (5th Cir. Aug. 7, 2023) (footnote omitted). Withholding of removal requires a showing that the applicant more likely than not would be persecuted on account of a protected ground. *Jaco v. Garland*, 24 F.4th 395, 401 (5th Cir. 2021). "Withholding of removal is a higher standard than asylum," so an applicant who "does not meet the bar for asylum . . . also does not meet the standard for withholding of [removal]." *Efe v. Ashcroft*, 293 F.3d 899, 906 (5th Cir. 2002).

Munoz-De Zelaya and Guerrero argued that they suffered persecution due to their membership in the proposed PSG of "Salvadoran business owners." The BIA rejected that proposed PSG, reasoning that "[e]mployment, including business ownership, can be changed and is not fundamental to an individual's identity or conscience as an immutable characteristic." We agree. "Business owner" is not an immutable trait, and we have recognized as much on several previous occasions. *See Rivera-Alvarez v. Garland*, No. 22-60595, 2023 WL 4235548, at *1 (5th Cir. June 28, 2023); *Alvarado-Velasquez v. Garland*, No. 20-60930, 2022 WL 2072860, at *1 (5th Cir. June 9, 2022) ("The BIA concluded petitioner's proposed social group 'Honduran business owners'—is not cognizable under the INA. We agree."); *Penado-Hernandez v. Barr*, 795 F. App'x 283, 285 (5th Cir. 2020) ("[B]usiness owners, wealthy Salvadorans, and persons subject to economic extortion are not protected groups.").

Because a PSG is an essential element of claims for asylum and withholding of removal, Munoz-De Zelaya and Guerrero cannot succeed on either claim. Therefore, we need not consider their arguments about nexus and persecution. *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) (per curiam) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

B

Munoz-De Zelaya and Guerrero also ask us to consider an alternative PSG based on family status, and to take notice of what they describe as certain policy changes from the Department of Homeland Security. But Munoz-De Zelaya and Guerrero did not present these arguments to the BIA. We "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). This exhaustion requirement "is a non-jurisdictional rule" that "merely prescrib[es] the method by which the jurisdiction granted the courts

No. 22-60505

by Congress is to be exercised." *Santos-Zacaria v. Garland*, 598 U.S. 411, 419 (2023) (internal quotation marks and citations omitted). In other words, "§ 1252(d)(1) imposes an exhaustion requirement, which is a quintessential claim-processing rule." *Id.* at 417. "A claim-processing rule requiring parties to take certain procedural steps in, or prior to, litigation, may be mandatory in the sense that a court must enforce the rule if timely raised." *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1844 (2019) (internal quotation marks and citation omitted).

Regardless of whether § 1252(d)(1)'s claim-processing rule is mandatory in the present context, we decline to reach the arguments that Munoz-De Zelaya and Guerrero have failed to exhaust. *See Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023) (similar); *Odei v. Garland*, 71 F.4th 75, 78 n.1 (1st Cir. 2023) (similar); *Lopez-Hernandez v. Garland*, No. 22-3990, 2023 WL 4626785, at *4 (6th Cir. July 19, 2023) (similar); *see also Ud Din v. Garland*, 72 F.4th 411, 420 (2d Cir. 2023) (treating the rule as "mandatory," but also recognizing some "exception[s]"); *Tepas v. Garland*, 73 F.4th 208, 213 (4th Cir. 2023) (treating the rule as "mandatory").

Finally, Munoz-De Zelaya and Guerrero argue that their original notices to appear failed to include the date and time of the initial hearing and were therefore legally insufficient under 8 U.S.C § 1229(a)(1). *Cf. Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1478 (2021). But the BIA has concluded that "the time and place requirement … [is] not a jurisdictional requirement." *Matter of Fernandes*, 28 I. & N. Dec. 605, 608 (BIA 2022). Likewise, we have held that "a notice to appear is sufficient to commence proceedings even if it does not include the time, date, or place of the initial hearing." *Maniar v. Garland*, 998 F.3d 235, 242 (5th Cir. 2021) (internal quotation marks and citation omitted). Even if the initial notices that Munoz-De Zelaya and Guerrero received were defective, those defects did not affect

6

No. 22-60505

the IJ's or the BIA's jurisdiction. Section 1252(d)(1)'s exhaustion requirement thus applies, and we decline to consider this argument further.

## IV

Regardless of geography, "business owners" are not a protected social group. Because Munoz-De Zelaya and Guerrero did not exhaust their additional arguments before the BIA, the petition for review is DENIED.